UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| SUPPLEMENT EDGE, INC. d/b/a NEXT GEN NUTRITION, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | No. 2:20-cv-00348-LEW |
| ONE BRANDS, LLC, | ) ) | |
| Defendant | ) ) | |

## ORDER ON MOTION TO DISMISS

Plaintiff Supplement Edge, Inc. d/b/a Next Gen Nutrition is an online "third party seller" of nutritional items and relies on the Amazon marketplace to make its sales. Defendant One Brands, LLC, makes nutritional items, including ONE protein bars. Plaintiff alleges Defendant interfered with Plaintiff's advantageous relationship with Amazon by taking steps to prevent Plaintiff from selling Defendant's products.

The matter is before the Court on Defendant's Motion to Dismiss the Amended Complaint (ECF No. 15). Defendant argues that the Court does not have jurisdiction over its person and that Plaintiff, in any event, has failed to state a claim. I conclude that jurisdiction is lacking and dismiss on that basis without addressing whether Plaintiff's amended complaint states a claim for relief.

### ALLEGATIONS

The following allegations are drawn from the amended complaint (ECF No. 14), which supersedes the original complaint.

Plaintiff is a Maine business corporation with operations in Maine; Defendant is a Delaware limited liability company headquartered in Charlotte, North Carolina. Defendant's nutritional products are available for purchase in retail stores in Maine.

Plaintiff has sold, for some time, Defendant's products through the Amazon marketplace. Defendant opposes Plaintiff's sale of certain of Defendant's products and has directed electronic communications to Plaintiff via Amazon and letters sent by post. In 2020, Defendant placed an order with Plaintiff via Amazon, which order Plaintiff fulfilled and mailed to Defendant from Portland, Maine.[1] Not long thereafter, Amazon "delisted" the product in question, preventing Plaintiff from selling it on Amazon.

Plaintiff's ability to sell products through Amazon is governed by an Amazon Services Business Solutions Agreement and by Amazon Product Guidelines, copies of which are exhibits to Plaintiff's amended complaint. In communications with Plaintiff, Defendant has accused Plaintiff of violating Defendant's minimum advertising price policy. In a communication in May 2020, Defendant also told Plaintiff that it needed to protect its brand, partners, and customers and, therefore, needed to verify the authenticity and quality of Plaintiff's inventory of Defendant's product. Defendant instructed that if it could not do so it would request removal of the product from Plaintiff's Amazon marketplace. Plaintiff further alleges that Defendant "cited a variety of violations," but Plaintiff does not relate the substance of these contentions in its amended complaint. Am. Compl. ¶ 25.

---

[1] Defendant's communications and its orders evidently are the product of Defendant's objection to Plaintiff's merchandising of Defendant's products. Plaintiff alleges that, since 2018, Defendant has attempted to prohibit Plaintiff from selling Defendant's products through Amazon.

Plaintiff says that sometime after receipt of product from Plaintiff in the summer of 2020, Defendant falsely reported to Amazon that Plaintiff was violating Amazon's contract or guidelines and that Amazon, in response, delisted "many" of Defendant's products that Plaintiff was selling and will not restore to Plaintiff the ability to list the products. Plaintiff complains that it has thousands of dollars of inventory it cannot sell on Amazon, which serves as Plaintiff's principal marketplace.

Based on these allegations, Plaintiff requests a judgment declaring that Defendant's reports to Amazon were false (Count I) and an award of economic damages for tortious interference with a contractual relationship (Count II) and tortious interference with existing and prospective economic advantage (Count III).

## DISCUSSION

"Maine's long arm statute extends as far as the United States Constitution permits." *Accessories Ltd. of Maine*, *Inc. v. Longchamp U.S.A.*, 170 F. Supp. 2d 12, 14 (D. Me. 2001). Consequently, the jurisdictional inquiry is a due process inquiry. *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1779 (2017). To satisfy due process, a plaintiff must demonstrate that the cause it puts before the court arises out of or is significantly related to the defendant's forum-specific contacts (so called "specific jurisdiction") or that the defendant maintains connections with the forum state that are "so continuous and systematic" that it is fair and substantial justice for the defendant to be treated as "at home" in the forum state (so called "general jurisdiction"). *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017). As these standards suggest, it is possible for a defendant to have some contact with the forum state, including even some contact "related"

to a legal controversy, yet still evade the coercive power of the forum state's courts. *Id.* at 1559.

Plaintiff argues the Court has claim-specific jurisdiction over Defendant. Should the Court disagree, Plaintiff asks for leave to conduct jurisdiction-specific discovery to see if it can learn of facts suggesting that Defendant is "at home" in Maine. Opposition at 10-16.

### A. Specific Jurisdiction

To demonstrate specific jurisdiction, Plaintiff must make a prima facie showing that establishes all three of the following conditions: (a) that there is a sufficient nexus between its claims and Defendant's activities in Maine; (b) that Defendant's in-state activities reflect purposeful availment of the privilege of conducting activities in Maine, thereby invoking the benefits and protections of Maine law and making it foreseeable that Defendant could be summonsed to appear before a Maine court; and, assuming Plaintiff's showing on the first two conditions is at least "close," (c) that the exercise of jurisdiction is reasonable in relation to a handful of *gestalt* factors. *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 59-62 (1st Cir. 2016).

#### 1. *Nexus / Relatedness*

Ordinarily, a plaintiff's experience of in-forum effects due to a defendant's out-of-forum activity is not enough, standing alone, to support the exercise of personal jurisdiction over the defendant. *Id.* (citing *Sawtelle v. Farrell*, 70 F.3d 1381, 1390-91 (1st Cir. 1995)); *Longchamp*, 170 F. Supp. 2d at 15. Plaintiff relies not only on the in-forum effects of having its Maine-based access to the Amazon marketplace curtailed, but also on Defendant's Maine-directed communications with Plaintiff, in both electronic and paper

4

format, and Defendant's placement of an order through Amazon that Defendant should have known would result in the shipment of product from Maine.

I find Plaintiff's showing to be a weak showing of relatedness, not a close showing. Particularly significant to my finding is the fact that none of the forum-based activities is actionable. For example, quite unlike the *Calder*-effects scenario, Defendant did not direct a statement into Plaintiff's home forum likely to cause actionable harm. *Calder v. Jones*, 465 U.S. 783 (1984). Furthermore, upon Defendant discovering the Amazon activity it objected to, it was a mere happenstance that the third-party seller, Plaintiff, should be in Maine.

The relatedness inquiry gives central regard to whether forum contacts have causal significance, meaning they can be regarded as having a "material connection" to the litigation on the order of "proximate cause" such that they supply a material element of proof in the plaintiff's case. *Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 25 (1st Cir. 2007); *Harlow v. Children's Hosp.*, 432 F.3d 50, 62 (1st Cir. 2005); *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992). Defendant's claim-related contacts do not rise to that level. Although the contacts are relevant to understanding some background to the litigation, they are not material in the sense that resolution of the dispute depends in any way on the occurrence of the contacts in question.

### 2. *Purposeful availment*

The problematic characteristics of the relatedness inquiry do double duty when it comes to purposeful availment. Purposeful availment requires contacts that demonstrate

the intention to submit to the sovereign power of the forum state; the kind of contacts that reflect an exercise of forum-centered privileges that necessarily invoke the benefit and protection of the forum's laws. *J. McIntyre Mach.*, *Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011). Such contacts are acts of engagement with the forum that necessarily imply submission to its authority in relation to the matter in controversy. *Id.*

Defendant's forum contacts – sending communications to Plaintiff and placing an order on Amazon likely to be fulfilled with inventory located in Maine – are not in the nature of submissive acts designed to engage the sovereign power of the State of Maine. Nor has Plaintiff demonstrated that Defendant intended a forum-specific effect. Rather, Plaintiff's showing demonstrates only Defendant's intent to cause an Amazon-specific effect. Plaintiff has neither alleged nor demonstrated that Defendant, in its efforts to have its products delisted from Plaintiff's corner of the Amazon marketplace, sought to avail itself of any Maine-based privilege or Maine-based remedies. Rather, from what little can be surmised from Plaintiff's showing, it appears Defendant expressed the intention to avail itself of product condition standards set out in Amazon's agreement and guidelines and ultimately did so directly with Amazon. This showing does not demonstrate activity meant to invoke the benefits and protections of Maine law. Nor does it demonstrate activity meant to undermine Plaintiff's relationships within Maine. Furthermore, because the alleged tortious conduct was not "expressly aimed" at Maine, it evades the purposeful availment rubric in relation to this forum. *See*, *e.g.*, *Longchamps*, 170 F. Supp. 2d at 15; *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 256 (3d Cir. 1998).

### 3. *Reasonableness*

Because Plaintiff's showing on the first two conditions is what it is, the *gestalt* reasonableness factors[2] will not aid it. However, the factors would not come to Plaintiff's aid, in any event. The manufacturer of a product should be able to challenge directly through Amazon a third-party seller's distribution of the product on Amazon without fear of thereby being hailed into any court in the nation based on the happenstance of the third-party seller's home forum. *Cf. Bristol-Meyers Squib*, 137 S. Ct. at 1780 (observing that the paramount reasonableness consideration is the burden the exercise of personal jurisdiction imposes on the defendant). To the extent Plaintiff has a dispute with Amazon about how it chooses to enforce its terms of use, that may be cause for anxiety in a brave new world, but it does not bear on the humdrum of the traditional jurisdictional inquiry.

### B. General Jurisdiction Discovery

Plaintiff proposes to take limited jurisdictional discovery to see whether Defendant, a Delaware business entity with a place of operation in North Carolina, is also "at home" in Maine. Opposition at 15-16 (citing *Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 57 (1st Cir. 2020)). More particularly, Plaintiff states that it would like to pursue "further information regarding [Defendant's] business dealing in Maine relative to the rest of the country." *Id.* at 16.

A plaintiff may be permitted to conduct jurisdictional discovery when it has made a colorable showing on the jurisdictional question. *United States v. Swiss Am. Bank, Ltd.*,

---

[2] The five factors are the defendant's burden of appearing, the forum state's interest in resolving the dispute, the plaintiff's interest in convenient and effective relief, the judicial system's interest in the most effective resolution of the dispute, and "the common interests of all sovereigns in promoting substantive social policies." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 61 (1st Cir. 2016).

274 F.3d 610, 625 (1st Cir. 2001). Here, Plaintiff has shown only that Defendant's products are on several store shelves in Maine. That is not a colorable showing that Defendant is "at home" in Maine to answer any and all legal proceedings concerning its conduct elsewhere. Furthermore, the law is clear that "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 564 U.S. 915, 930 (2011). *See also Bristol-Myers Squibb*, 137 S. Ct. at 1781. Plaintiff's preliminary showing is not a colorable showing of general jurisdiction because the showing is nothing more than the kind of sales activity described as inadequate in, among other cases, *Goodyear* and *Bristol-Myers Squibb*. Because the showing is not colorable, Plaintiff's request for jurisdictional discovery is denied.

## CONCLUSION

Plaintiff has failed to make the necessary prima facie showing that this Court can exercise specific jurisdiction over the person of the Defendant in this matter without offending the Due Process Clause, or that a limited course of discovery is likely to turn up facts that would support the exercise of general jurisdiction. Defendant's Motion to Dismiss the Amended Complaint (ECF No. 15) is GRANTED.

**SO ORDERED.**

Dated this 1st day of March, 2021.

                                            /s/ Lance E. Walker
                                            UNITED STATES DISTRICT JUDGE